DAVID R. DILLON, plaintiff in error, *vs.* ALEXANDER McRAE, defendant in error.

1. If a principle of law is clearly and distinctly read by counsel in the presence and hearing of the jury and the Judge in his charge says: "I charge you that the decision just read is law," without repeating it in the hearing of the jury, this is not error. It is sufficient if the law is given in charge so plainly that the jury can have no difficulty in understanding it, whether it is repeated in their hearing by the Judge himself, or read by another and sanctioned and charged by him as read.

2. Where one partner borrowed money in the name of the firm and promised to pay usurious interest, the other partner can not set up the illegality of the contract and thereby defeat the right of the creditor to recover back from the partnership his principal and legal interest. Under our law the contract is illegal to the extent of the usurious interest only.

Partnership Contracts. Usury. Charge of the Court. Before Judge SCHLEY. Chatham Superior Court. May Term, 1869.

Dillon brought assumpsit in the City Court of Savannah against McRae & Wilcox, composed of said McRae and one Wilcox, upon two promissory notes, dated the 9th and 11th of July, 1867, respectively, for $530 00 and $430 00, respectively, signed "McRae & Wilcox," payable to the order of Watts & McRae, and endorsed "Watts & McRae," in blank, due thirty days after date, and upon an open account for money laid out for the use of McRae & Wilcox, which seems to be the same as that for which the notes were given. Wilcox was not served. McRae pleaded the general issue, *non est factum,* that the notes were never delivered to Watts & McRae, nor endorsed by them, that the loan was to Wilcox alone and not to McRae & Wilcox, and not upon the credit of said McRae, that the transaction was usurious and not for the benefit or use of McRae & Wilcox, and without the knowledge or consent of said McRae.

DILLON testified that Wilcox brought him the notes on the days of their dates, saying he wished to pay for bacon to supply McRae & Wilcox's customers, and being a banker and broker, and supposing the paper all right, he let him have the money

on them, at five *per cent.* off, for thirty days; that he knew both firms to be of good standing and loaned the money upon the credit of both, but mostly upon that of McRae & Wilcox; that a few days afterwards Wilcox presented him another note for $2,000 00, drawn and endorsed in the same way and then he asked Watts about it, and was told by Watts that the endorsements on this and said two notes, were forgeries; that he knew McRae slightly, and understood he was son of McRae, the endorser, that Wilcox was the outdoor business man of McRae & Wilcox and that though the bank rate for money was less, money was very scarce, and it was a common practice with the merchants of Savannah to pay five *per cent.* per month for money. The notes being read in evidence, the plaintiff closed.

Said McRae testified that he was absent from the city from the 17th of June till the 17th of July; he left Wilcox in charge of a good business and returning, found that Wilcox had been drinking and that the business was much deranged; never heard of these notes till he received notice of them from the bank and immediately he dissolved the firm; Wilcox left Savannah on the same day and had not been heard of since; his firm were Factors and Commission Merchants, in good standing, when said notes were made, could have obtained such sums from the banks, at bank rates of interest, and had never paid usury for loans, and could have bought provisions, etc., to such amounts, on credit of thirty days, without interest; he never consented to or ratified said transaction; said money not only did not go into the business of the firm, but Wilcox fraudulently used other money which did belong to the firm; bank rate of interest was one *per cent.*, per month, *plus* legal interest; the endorsement on these notes were forged apparently by Wilcox, and even after said dissolution, Wilcox forged checks of the firm and drew money thereon. A commission merchant testified that it was not "within the scope" of such a business "to borrow money to furnish provisions to its patrons, at five *per cent.*, per month." Watts testified that said endorsements were forgeries, and that he thought Wilcox left the city the day after it was discovered by Dil-

lon's asking about the $2,000 00 endorsement. A person who had been engaged at the books of McRae & Wilcox testified that he found no entry of said funds on said firm's books. Another witness testified that he credited McRae & Wilcox, for thirty days, for as much as $1,000 00 worth of goods and would have done so at the dates of said notes. It was shown that profits on groceries ranged then from two and a half per cent. to twenty-five per cent., for thirty days, according to the article, etc.

In rebuttal it was shown that McRae & Wilcox deposited in bank, on the 12th, 16th and 18th of July, 1867, respectively, $130 00, $400 00, in currency, and $100 00, in specie, and that certain creditors ceased dunning about the date of this loan. In surrebuttal the cash book of McRae & Wilcox was produced, which showed that they collected on the 12th of July, 1867, $1,000 00 and that $280 00, above receipts, was paid out by the firm between the 10th and 18th of July, inclusive.

Plaintiff's attorney, in arguing the cause to the jury, read the syllabus of the Manufacturers' & Mechanics' Bank, *vs.* Gore *et. al.*, 15th Massachusetts Reports 75, and the *decision* of the Court in the same volume, of Boardman *vs.* Gore *et. al.*, on page 330. This last case was read at length, near the conclusion of his argument. As he finished, the Judge asked for it and then charged the jury in substance as follows :

1. Gentlemen : Without stopping to weary you by repeating the decision of the Supreme Court of Massachusetts, which has just been read by the counsel for plaintiff, I charge that decision to be the law, and that when the partner, Wilcox, upon the firm name of Wilcox & McRae, received the money from David R. Dillon, the money so received was instantly in the eye of the law received to the use of the plaintiff, and both the co-partners were prima facie liable therefor.

2. By section 1905, New Code of Georgia, all the partners are responsible to *innocent* third persons for damages arising from the fraud of one in matters relating to the partnership.

3. And by section 1902 of the same Code, "a person lending money to a partner for the firm is not bound to see to its

appropriation, but if he knows, or has reasonable grounds to suspect that it is intended to be applied to other purposes than the business of the firm, he cannot recover it from the partnership."

4. If from the testimony you find that this money borrowed from plaintiff by Wilcox was in fact applied to the co-partnership uses of Wilcox & McRae, then the defendant McRea is liable upon the money counts in the declaration, less the usurious interest.

5. But if you find that the money borrowed was not applied to the uses of the co-partnership, and further find that David R. Dillon, the plaintiff, knew, or had reasonable grounds to suspect, that the money borrowed was intended to be applied to other purposes than the business of Wilcox & McRae, then David R. Dillon, the plaintiff, cannot recover from the defendant, McRae.

6. It has been contended by counsel for defendant that the form of the notes which were drawn by Wilcox & McRae, payable to Watts & McRae, and purported to be endorsed by Watts & McRae, was of itself sufficient to create a reasonable ground to suspect that the money borrowed was intended to be applied to other purposes than the business of the firm, the presumption being that Wilcox & McRae had no further title to the notes. The notes are in the ordinary shape of accommodation paper, and in my judgment the legal presumption, from the fact of their being in possession of the makers, was that the liability of the endorsers was more that of sureties, and accessory to that of Wilcox & McRae, who were the principal debtors, (N. C. section 2133). I charge you, therefore, that the mere form of the notes, which is a question of law, was not sufficient to create resasouable grounds to suspect that the money borrowed was intended to be applied to other purposes than the business of the firm.

7. I further charge that the *mere fact* of the indorsements on said notes being forgeries, is not a reasonable ground for plaintiff to suspect that Wilcox intended to apply the money to other purposes than for the business of the firm, unless you find that David R. Dillon knew said indorsements to be

forgeries, or had reasonable grounds to suspect them to be such.

8. Usury, by section 2024 of the New Code, "is the reserving and taking, or contracting to reserve and take, either directly or by indirection a greater sum for the use of money than the lawful interest," which is seven per cent. per annum. And by section 2025 the effect of usury is to annul and make void the contract for the usury; the lender having the right to recover the principal sum loaned, with legal interest. By this statute the entire contract is not illegal, the usurious interest, and that alone, is illegal. And the mere fact that usury was in the loans, as a question of law, was not sufficient to create reasonable grounds to suspect that the money borrowed was intended for other purposes than the business of the firm. The defendant, of course, is entitled to be relieved of the illegal portion of the contract, which is the amount of interest over and above seven per cent. per annum.

9. And in conclusion, if you find that the money was not applied to the partnership uses, and there are any facts (except those which I have charged to be questions of law) such as excessive usury, or any other circumstances which in your opinion caused the plaintiff to know, or furnished him reasonable grounds to suspect, that the money borrowed was to be applied to purposes other than for the firm, the defendant McRae is not liable.

The jury returned a verdict for the plaintiff for the actual sum loaned, with interest from the date.

Defendant's attorneys brought the cause by *certiorari* before the Judge of the Superior Court, averring that the verdict was contrary to law and the evidence, and that the Judge of the City Court had erred in charging the jury. Their averments of what his charge was do not accord entirely with the charge as given by him. Suffice it to say, they averred that he erred in holding, as he did, certain facts matter of law and not of fact to be passed upon by the jury, in charging that the law as laid down in 15th Massachusetts Reports, page 330, was the law of this case, and that the plaintiff could recover though the contract was usurious and made without defendant's knowledge or ratification.

Judge Schley decided that this case and that in 15th Massachusetts Reports, 330, were so dissimilar that the first charge was erroneous, because it was calculated to mislead the jury, and that under the facts of this case, the charge that the contract was illegal only to the extent of the usury, was wrong. And he set aside the judgment in the City Court and ordered a new trial there. That is assigned as error here.

GEORGE A. MERCER, for plaintiff in error, as to the power of one partner to bind another, cited Smith's Mer. L., 79-85; Story on Agency, secs. 37, 124; Story on P., secs. 102, 108; Irwin's Code, secs. 1899, 1902, 1905, 2153; Boardman vs. Gore et. al., 15th Mass. R., 330; M. & M. Bk. vs. Gore et. al., Ib. 75. As to the effect of the usury, he cited Irwin's Code, sections 2024, 2025, 2707. Petrie vs. Hannay, 3rd T. R., 418, 419—425, inc. In Tennessee Code, section 4822, usury works different results from what it does here, and the cases in 6th and 8th Humphry, therefore, cannot govern.

HARDEN & LEVY, T. M. NORWOOD, for defendant, cited Story on P., sec. 128; 5th Conn. R., 579; Amer. L. Cas., 469; Story on P., secs. 111, 112 and Irwin's Code, sec. 1902, as to the law of partnership; 8th Humphry's (Tenn.) R., 415; 3rd Tenn. R., 423, as to usury, and said this case was not like that in 15th Mass. R., 330.

BROWN, C. J.

There were several rulings of the Judge of the City Court complained of in this case in the Superior Court. But Judge Schley confined his judgment to the third and fourth grounds, which were in these words: Third, because the Judge erred in charging that the law, as laid down in the case of Boardman vs. Grafton, page 330, volume 15, Massachusetts Reports, was the law of this case. Fourth, because the Judge erred in charging the jury that Dillon could recover of McRae, on an usurious contract made between Dillon and Wilcox without McRae's knowledge or ratification.

We do not think the Judge of the City Court erred in either

of these charges. It appears from the record that the case in 15 Massachusetts Reports had just been read in the presence and hearing of the jury, by counsel, and the Judge referred them to the decision "which had just been read," and said : "I charge that decision to be the law, and that when the partner, Wilcox, upon the firm name of Wilcox & McRae, received the money from David R. Dillon, the money so received was instantly, in the eye of the law, received to the use of the plaintiff, and both the copartners were *prima facie* liable therefor."

The principle announced in the decision referred to, and in the case of Manufacturers' and Mechanics' Bank vs Gore and Grafton, in the same volume, page 75, is, that when one of two copartners obtained money upon a note signed by him, with the name of the firm, and purporting to be endorsed by a third person, payable at a future day, and before the maturity of the note it was discovered that the name of the supposed endorser had been forged, it was held that the lender of the money was entitled to his action *immediately*, as for money received to his use, and that the action well lay against both the partners, although the other knew nothing of the forgery, the money having gone to the use of the partnership.

It will be observed by reference to the charge of the Court as given, that he does not say that decision is the law *of this case*, as set forth in the third ground of exception; but "I charge that decision to be the law." In other words, he charged that the principle announced in that decision was a sound rule of law when applied to the facts of this case. This is the substance of the charge, as it was doubtless understood by the jury, and in this we agree with the Judge of the City Court. See 12 *Georgia*, 271, 329.

It is true, the evidence is not by any means conclusive that the money obtained by Wilcox from Dillon was applied to the use of the partnership; but there was evidence tending to prove that fact. Nathans, the book-keeper, swears that the creditors of the firm, who had been frequently calling to demand their pay, stopped coming about the time this money was received by Wilcox from Dillon. It was also in

evidence that McRae, the other partner, was not in town during the period of this transaction. If the creditors stopped coming because they had been paid, as is most probable, it is reasonable to infer that the payment was made by Wilcox. Nathans also shows by the cash-books of the firm that $280 00 were paid out above the cash received, from 12th to 18th July, inclusive. And the evidence of Cunningham, the bank officer, shows that, during this same period, there were three deposits made in bank in the name of the firm, amounting in the aggregate to $530 00 in currency and $100 00 in specie.

Upon this state of facts, in connection with the other evidence in the case, we think the charge as given was sound law, and applicable to the case then on trial. It will be observed, the Judge did not refer to the decision in the book just read as the law, and stop there, but he went on to make the application, by saying : "And when the partner, Wilcox, upon the firm name of Wilcox & McRae, received the money from Dillon, the money so received, was, instantly, in the eye of the law, received to the use of the plaintiff," etc.

2. But could McRae avoid the payment of this note on the ground that his partner contracted to pay usurious interest when he borrowed the money in the firm name ? We think not. We admit that one partner cannot bind his co-partner by any illegal contract, and it is very clear, therefore, that the other partner was not bound to pay the usury which Wilcox promised to pay for the use of the money. To the extent of the usury the contract was illegal and void. But it was a legal contract by our law to pay the principal and legal interest, and McRae was bound by it to that extent. There was no difficulty in this case in separating the illegal from the legal part of the contract. The Court and jury could readily ascertain what part of it was legal, and it was their duty to enforce it accordingly.

Upon a careful examination of the whole charge as given by Judge Chisholm to the jury, in the City Court, we are of opinion that the case was fairly submitted to their consideration. He expressly charged, that, "if from the testimony you

find that this money, borrowed from plaintiff by Wilcox, was in fact applied to the copartnership uses of Wilcox & McRae, then the defendant, McRae, is liable upon the money counts in the declaration, less the usurious interest. But if you find that the money borrowed was not applied to the uses of the copartnership, and further find that David R. Dillon, the plaintiff, knew, or had reasonable grounds to suspect, that the money borrowed was intended to be applied to other purposes than the business of Wilcox & McRae, then David R. Dillon, the plaintiff, can not recover from defendant, McRae." We are satisfied the charge was substantially correct, and that the evidence was sufficient to sustain the verdict.

We therefore reverse the judgment of the Superior Court, and direct that the *certiorari* be dismissed.